UNITED STATES of America,
Plaintiff–Appellee,

v.

Ronald J. McALLISTER,
Defendant–Appellant.

No. 93–1669.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 3, 1993.

Decided March 18, 1994.

**1414**

Robert Anderson, AUSA, Asst. U.S. Atty. (argued), Madison, WI, for plaintiff-appellee.

Ralph A. Kalal (argued), Kalal & Associates, Madison, WI, for defendant-appellant.

Before POSNER, Chief Judge, COFFEY, Circuit Judge, and ZAGEL, District Judge.*

COFFEY, Circuit Judge.

Ronald J. McAllister ("McAllister") was indicted on one count of manufacturing marijuana and one count of possessing marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). The defendant moved to suppress the marijuana seized pursuant to a search warrant, and sought an evidentiary hearing challenging the warrant affidavit under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The magistrate judge denied the motion to suppress and the motion for a *Franks* hearing in an order dated December 16, 1992. On appeal, the district court agreed with the Magistrate Judge's reasoning and affirmed. McAllister then pled guilty to one count of manufacturing marijuana while reserving his right to appeal the court's refusal to grant him a *Franks* hearing pursuant to Fed.R.Crim.P. 11(a)(2). The trial judge accepted the negotiated plea and sentenced the defendant to seventy months in prison to be followed by five years of supervised release, and ordered payment of a $50.00 special assessment.

The defendant appeals the denial of his motion for a *Franks* hearing, and we affirm.

## BACKGROUND

Detective Jeff Blakley ("Blakley") of the Dane County, Wisconsin, Sheriff's Department, received a tip from a confidential informant (referred to under police code name "MPD1022") that the defendant was growing marijuana in the attic of his house in Stoughton, Wisconsin. Armed with this information, Detective Blakley applied for and received a search warrant for McAllister's house and executed it on May 5, 1992. In an affidavit in support of his warrant application, Blakley stated that:

"MPD1022 informed your complainant that within the past seventy-two hours MPD1022 had been at the [McAllister] residence at 904 Dunkirk Street in the City of Stoughton and had contact with Ronald McAllister. MPD1022 advised that McAllister had shown MPD1022 a room in the residence at 904 Dunkirk Street which would be in the attic area of the residence. MPD1022 states that concealed within this room are one Sodium light, several milk cartons containing approximately fifty marijuana plants each approximately one to one-and-a-half feet tall...."

The affidavit also explained why Detective Blakley believed his informant's tip would prove reliable:

"... Your complainant knows MPD1022 to be truthful and reliable in as much as MPD1022 has provided your complainant with approximately ten pieces of information which have been corroborated through independent means and MPD1022 has assisted your complainant in the seizure of controlled substances on past occasions while working at the direction of your complainant. Your complainant wishes that MPD1022 remain anonymous for MPD1022's personal safety and so that MPD1022 will be able to continue assisting your complainant and the other members

* The Honorable James B. Zagel of the Northern District of Illinois, sitting by designation.

of the Dane County Narcotics Enforcement Team in current and future drug investigations."

Pursuant to the search warrant, police searched the house and found marijuana plants growing in the defendant's attic. During the search the officers discovered some 599 marijuana plants as opposed to the fifty plants that the informant had stated were on the premises. These 599 plants were growing in 218 quart-size cardboard Coke cups rather than in the "several milk cartons" described in the warrant affidavit.

The police seized the plants and arrested McAllister, and he was subsequently indicted and charged with manufacturing marijuana and possessing marijuana with intent to distribute. The defendant filed two motions to suppress. In the first motion he alleged that the informant (MPD1022) must have unlawfully entered his home on May 1, 1992. In an alternative motion, he alleged that the informant had not been in McAllister's attic in May 1992 as he had claimed, but that he was simply describing the smaller marijuana operation he had observed in his house a year earlier in May of 1991. In this motion he requested that the district court conduct an evidentiary hearing pursuant to *Franks* to determine if the informant was acting as a "police agent" when he falsely claimed to have observed the defendant's marijuana operation in the "past 72 hours."

McAllister submitted a number of affidavits in support of the motions, for instance, in support of his motion to suppress on the grounds that the informant had gathered his information by breaking into his residence, the defendant swore that he had not consented to anyone entering much less viewing his attic during the five days preceding the search of his house. He also alleged that there had been a break-in at his home on May 1, 1992, while he was away.[1]

In support of his alternative motion arguing that the CI's information had been based on his observation of the defendant's attic a year earlier in May 1991, McAllister swore that the information MPD1022 gave to the police (regarding 50 plants growing in milk cartons) accurately described the contents of the defendant's attic as of May 1991, but did not describe the operation he was presently conducting, and discovered by the police in May 1992 (599 plants growing in Coke cups).

In response, the government submitted an affidavit from Detective Blakley stating that "all of the information contained in that affidavit in support of the search warrant I have believed to be fully accurate and correct at the time of the application for the search warrant" and that "to this date [November 30, 1992] I have no information or suspicions that the information that I received from the confidential informant came from any manner other than lawful observations made by the confidential informant while present in the home with the permission of the defendant."

After reviewing the facts in the case, the Magistrate Judge ruled on the defendant's pre-trial motions and issued an order denying the motion to suppress based on an alleged break-in, reasoning that even taking "at face value defendant's claim that somebody broke into his house on May 1, 1992 ... McAllister has not made a substantial preliminary showing that the CI is that person." Turning to the defendant's alternative motion alleging that the CI had lied to Detective Blakley when he told him that he had observed McAllister's attic "within the past 72 hours," the Magistrate Judge found that McAllister had made a substantial preliminary showing that the informant may have lied about when he had last been in the defendant's attic, but that there was no evidence that the affiant (Detective Blakley) knew or should have known that the informant may have been less than truthful. The Magistrate Judge reasoned that the defendant was not entitled to a *Franks* hearing unless he could make a substantial preliminary showing that the informant was acting as a government agent when he conveyed his tip to the police. Concluding that McAllister had failed to make the required showing, he

---

1. To corroborate his claim of an illegal break-in, two of McAllister's friends submitted affidavits that they had observed the damage to his front door which the defendant attributed to the alleged May 1, 1992, break-in.

denied McAllister's motions to suppress and his motion for a *Franks* hearing.

The district court accepted the Magistrate Judge's reasoning in an order dated January 8, 1993, and ruled that "[a]lthough the defendant has made a substantial showing that the informant may have lied to Blakley, he has not shown that Blakley knew, or even should have known, of the possible lies and is not entitled to a *Franks* hearing."

## ISSUE

The defendant has elected not to contest the trial court's determination that he failed to make a substantial preliminary showing that the CI had broken into his home. The sole issue presented on appeal is whether the district court committed clear error in failing to grant McAllister a *Franks* hearing on the grounds that the CI was acting as a police agent when he gave the information to Detective Blakley concerning the 50 marijuana plants he had observed in McAllister's attic "within the past 72 hours."

## DISCUSSION

■ We review a district court's "factual and legal determinations on a motion to suppress for clear error." *United States v. Rice*, 995 F.2d 719, 722 (7th Cir.1993) (citations omitted). Under this standard, we will not hold that a trial judge's denial of a motion to suppress is clearly erroneous unless, after reviewing the record as a whole, we are of "the definite and firm conviction that a mistake has been committed." *United States v. Soria*, 965 F.2d 436, 439 (7th Cir.1992) (citations omitted).

■ The Supreme Court has held that because the Fourth Amendment prohibits police from intentionally or recklessly submitting false statements in a warrant affidavit, the defendant may obtain a hearing to challenge a warrant affidavit if (1) the defendant makes a "substantial preliminary showing" that the affiant has intentionally or recklessly included a false statement in the warrant affidavit and (2) the false statement was material, i.e., was necessary for a finding of probable cause to issue the warrant.

*Franks*, 438 U.S. at 155–56, 98 S.Ct. at 2676–77.

"A *Franks* hearing affords a defendant the opportunity to show, by a preponderance of the evidence, that the warrant affidavit contained perjury or a reckless disregard for the truth. If the defendant meets this burden, the court will set aside that 'false material' contained in the warrant affidavit, and if probable cause cannot be established from the valid and truthful portion of the affidavit, the entire search is deemed to be invalid and the ensuing search is void."

*United States v. Radtke*, 799 F.2d 298, 309 (7th Cir.1986) (quoting *United States v. McDonald*, 723 F.2d 1288, 1292 (7th Cir.1983)).

■ The Supreme Court directs that search warrant affidavits must be presumed to be valid. *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684. To overcome this presumption, the defendant seeking a *Franks* hearing must make a

"substantial preliminary showing that a false statement knowingly or intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."

*Franks*, 438 U.S. at 155–56, 98 S.Ct. at 2676.

■ In addition, as the *Franks* Court went on to explain, to mandate an evidentiary hearing for the purpose of challenging a warrant affidavit, "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine" the affiant. *Radtke*, 799 F.2d at 310 (quoting *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684).

In this case, both the Magistrate Judge and the district court found and stated that although McAllister may have made a substantial preliminary showing that the CI "may have lied" to Detective Blakley regarding the dates on which he had observed the defendant's marijuana plants, he had failed to establish that Blakley knew or should have known of those possible falsifications.

Generally, "the fact that a third party lied to the affiant, who in turn included the lies in a warrant affidavit, does not constitute a *Franks* violation. A *Franks* violation occurs only if the affiant knew the third party was lying, or if the affiant proceeded in reckless disregard of the truth." *United States v. Pritchard,* 745 F.2d 1112, 1119 (7th Cir. 1984) (quoting *United States v. Dorfman,* 542 F.Supp. 345, 366 (N.D.Ill.1982)). As the Supreme Court has explained, "the deliberate falsity or reckless disregard whose impeachment is permitted ... is only that of the affiant, not of any *non-governmental* informant." *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684 (emphasis added). On the other hand, if the defendant establishes that the third party who provided the affiant with false information was not a "non-governmental informant" but was a "government agent," a *Franks* hearing may still be in order:

> "In *United States v. Dorfman,* 542 F.Supp. 345 (N.D.Ill.1982) *aff'd sub nom. United States v. Williams,* 737 F.2d 594 (7th Cir. 1984), the court noted that while allegations that an *informant,* whose story was recited by an affiant, was lying are insufficient to require a *Franks* hearing, this principle does not apply when one *government agent* deliberately or recklessly misrepresents information to a second agent, who then innocently includes the misrepresentations in an affidavit."

*Pritchard,* 745 F.2d at 1118 (emphasis in original).

McAllister contends that MPD1022, the confidential informant ("CI") who provided the allegedly false information incorporated in Blakley's warrant affidavit, was acting as a government "agent" within the meaning of *Pritchard.* The defendant argues he is entitled to a *Franks* hearing even if (as McAllister apparently concedes) Detective Blakley neither knew nor had any reason to know that the informant's information may have been false.

When determining whether a private citizen has acted as a government agent, the question is "whether in light of all the circumstances of the case [the informant] must be regarded as having acted as an *'instrument'* or *agent* of the state...." *Coolidge v. New Hampshire,* 403 U.S. 443, 487, 91 S.Ct. 2022, 2049, 29 L.Ed.2d 564 (1971) (emphasis added). Under this standard, the defendant contends, he has made a substantial preliminary showing that the informant was a police agent. Specifically, McAllister relies on the fact that on two occasions (once in the search warrant affidavit and once in a letter to the U.S. Attorney) Detective Blakley stated that MPD1022 had "assisted" him in past drug investigations while working at his "direction."

McAllister contends that Blakley's own statements constituted a "substantial preliminary showing" that the CI was acting as a police agent when he told Blakley that he had recently observed the defendant's marijuana operation. The defendant also complains that the court "didn't explain what evidence it relied upon" in concluding that he hadn't proved that the CI was acting as a government agent. But the question is not what evidence the court relied upon, but whether the appellant made a substantial preliminary showing that the CI was acting as an agent of the state when he provided his allegedly false information to Detective Blakley. Although McAllister attempts to shift the burden of proof on this issue from the defendant to the government, the law is clear that it is the defendant who must produce the evidence to establish that the CI *was* acting as a government agent at the time in question. *United States v. Koenig,* 856 F.2d 843, 847 (7th Cir.1988).

The determination of whether a CI was acting as a government agent "must be made on a case-by-case basis by the district judge, and reviewed under the deferential 'clearly erroneous' standard." *Id.* (citing *United States v. Walther,* 652 F.2d 788, 791 (9th Cir.1981)). Initially, we determine "whether the government knew of and acquiesced in the intrusive conduct," and secondly "whether the private party's purpose ... was to assist law enforcement efforts or to further his own ends." *United States v. Feffer,* 831 F.2d 734, 739 (7th Cir.1987). Other "useful criteria" in our analysis include whether the informant performed the conduct at the request of the government and

whether the government offered him a reward. *United States v. Malbrough*, 922 F.2d 458, 462 (8th Cir.1990) (citing *Koenig*, 856 F.2d at 847).

 Our review of the record discloses that the defendant has failed to satisfy the above criteria governing when a private citizen may be deemed to have been acting as a government agent. McAllister failed to demonstrate that the government acquiesced in the informant's allegedly false statement concerning his observing of the defendant's marijuana operation "within the past 72 hours," or that Detective Blakley had any reason to suspect that this statement was untrue. It is undisputed that MPD1022 had provided Detective Blakley with truthful information in the past and that the informant's description of the defendant's marijuana operation in the attic area of his house was believable.

 Nor has the defendant established that the informant's purpose was to assist law enforcement efforts rather than to further his own ends. To the contrary, there is substantial evidence in the record that the CI was working primarily to further his own interests in hope of increasing his chances of receiving favorable treatment in the handling of his own pending drug charges. That a CI might *also* have intended to assist law enforcement does not transform him into a government agent so long as " 'the private party has had a legitimate independent motivation for' engaging in the challenged conduct." *United States v. Attson*, 900 F.2d 1427, 1432 (9th Cir.1990) (holding private party was not an agent for Fourth Amendment purposes). In *Attson*, the Ninth Circuit summarized the standard for demonstrating that a private individual was in fact working as an agent of the government:

> The intent test described in *Walther* and further refined and applied in [*United States v. Howard*, 752 F.2d 220, 227 (6th Cir.), *cert. denied*, 472 U.S. 1029, 105 S.Ct. 3506, 87 L.Ed.2d 636 (1985) ] thus recognizes that a party is subject to the fourth amendment only when he or she has formed the necessary intent to assist in the government's investigative or administrative functions; in other words, when he or she intends to engage in a search or sei-

zure. However, *under this test, the fourth amendment will not apply when the private party was acting for a reason that is independent of such a governmental purpose.*

*Attson*, 900 F.2d at 1432–33 (emphasis added).

Not only does the record clearly contain evidence that the confidential informant was "acting for a reason that is independent of ... a governmental purpose," i.e., he was seeking to lessen the penalty of drug charges pending against himself, but the record contains no evidence whatsoever that the government ever requested the informant to investigate McAllister or offered him any reward for doing so or even discussed the subject of McAllister. In fact, the record is clear that the informant acted completely on his own initiative. And although, as the magistrate found, McAllister may have produced evidence tending to support his claim that the informant had lied to the police about the date on which he had seen the approximately fifty marijuana plants in milk containers in McAllister's attic, this in no way supports the defendant's claim that the informant was a government agent.

 The only other evidence the defendant can point to in support of his argument that the confidential informant was a "police agent" are Detective Blakley's own statements. The record confirms that Blakley did write, both in his warrant affidavit and in his correspondence with the U.S. Attorney's office, that the informant had previously "assisted" him in the seizure of controlled substances while working at Blakley's "direction" in past investigations. Relying on this statement, we think it clear that Detective Blakley intended no more and no less than that MPD1022 was a reliable "tipster." The defendant's interpretation of the statement—that Detective Blakley was admitting to having directed the CI to physically assist him in the seizure of controlled substances— is unsupported by any evidence in the record. There is no reason to doubt that the "assistance" provided by MPD1022 was simply *information* of the sort CI's typically offer their police contacts.

■ Although we are convinced that McAllister failed to make a substantial preliminary showing that confidential informant MPD1022 ever acted as a government agent in the past, we observe that even if such a showing had been made, the question remains whether the CI was acting as a government agent in *this* case. We agree with the magistrate judge that "neither the case law nor common sense supports the proposition that a C.I. [confidential informant] automatically obtains and retains an ongoing status as a law enforcement officer or a governmental agent for *Franks* purposes by virtue of past assistance to the police." Indeed, "it is every citizen's civic duty to do what he can to aid in the control and prevention of criminal activity." *Koenig,* 856 F.2d at 850.

Because McAllister failed to make a substantial preliminary showing that the CI was acting as a police agent when he provided Detective Blakley with information in this case, there is no basis in the record for concluding that the district court committed clear error in denying the defendant's motion for a *Franks* hearing. The judgment is

AFFIRMED