# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1150

_____

United States of America,          *
                                   *
            Appellee,              *
                                   *
     v.                            *
                                   *
James Aldridge,                    *
                                   *
            Appellant.             *

_____

No. 08-1153                        Appeals from the United States
_____                       District Court for the
                                  Western District of Missouri.

United States of America,          *
                                   *
            Appellee,              *
                                   *
     v.                            *
                                   *
Shirley Aldridge,                  *
                                   *
            Appellant.             *

_____

Submitted: October 14, 2008
Filed: April 3, 2009

_____

Before COLLOTON, BOWMAN, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted James Elbert Aldridge, Jr., and Shirley Lorraine Aldridge on five counts of aiding and abetting the filing of false tax returns, 26 U.S.C. § 7206(1) and 18 U.S.C. § 2. The Aldridges appeal, alleging grand jury, trial, and sentencing errors. Jurisdiction being proper under 28 U.S.C. § 1291, this court affirms.

I.

In September 1991, James Aldridge became a partner in Concept Marketing International (CMI), a nationwide retail business selling gold and silver coins. Investors purchased coins from CMI, and made commission profits by recruiting new buyers to form a four-tier syndicate.

CMI also sold consumers a trust system. Taxpayers created various trusts where they placed their assets. James Aldridge advised purchasers that, by funneling funds through the trusts, they could eliminate their tax liability by deducting personal expenses from taxable income.

The Aldridges personally used the trust system. Between 1999 and 2004, the Aldridges filed Form 1040 returns that failed to report taxable income of $1,685,381, causing a tax deficiency of $654,257. In four of those years, the Aldridges filed returns claiming the earned income tax credit.

In 2001 and 2002, respectively, tax accountants Brenda Fritts and Gary Edwards informed James Aldridge that these personal expense deductions were illegal. An investor, Charles Schurle, also told Aldridge that his tax attorney and accountant advised against the trust system. Nevertheless, Aldridge persisted in taking the deductions, and advised clients to do so without discussing the trust provisions with tax attorneys or accountants. In January 2004, CMI and Liberty

-2-

Commerce Group trusts (LCGT), two trusts under the Aldridges' control, were given a cease-and-desist order from the State of Missouri Securities Division. The two trusts, claiming to offer investors a 97% tax deduction for personal expenses, were ordered to stop omitting material facts.

On July 9, 2004, an Internal Revenue Service special agent served grand jury subpoenas on the Aldridges, requiring them to produce documents before a federal grand jury. The Aldridges twice failed to produce the requested documents. The government filed a motion for criminal contempt. The district court[1] allowed the Aldridges nearly four additional months to comply with the subpoenas, and eventually dismissed the contempt motion. The grand jury returned a five-count indictment charging the Aldridges with filing false tax returns.

A jury trial commenced. The court denied the Aldridges' motions for acquittal, mistrial, and the district judge's recusal based upon bias. During a ten-day trial, the court admitted evidence of: 1) CMI's pyramid sales scheme; 2) the cease-and-desist order from the Missouri Securities Division against CMI and LCGT; and 3) an extramarital relationship between James Aldridge and an employee. The Aldridges submitted jury instructions alleging a bona fide contract between the trusts and them. The court refused the instructions, instructing the jury on the Aldridges' defense of good faith and reliance on the advice of tax experts. The Aldridges were convicted on all counts.

At sentencing, the court considered evidence that James Aldridge was responsible for tax losses incurred by taxpayers involved with CMI or the trusts. Adopting the presentence investigation report, the court found James Aldridge responsible for $654,257 in personal taxes due and $427,770 in third-party tax deficiencies for a combined loss of $1,082,027. The court applied U.S.S.G. § 2T1.1,

---

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

assigning a base offense level of 22. The court increased James Aldridge's total offense level to 28 based upon special offense characteristics, abuse of trust, and perjurious testimony. The court determined James Aldridge's advisory guideline range as 78 to 97 months. The court applied an upward variance because the Guidelines did not adequately account for the harm to and number of third-parties. The court imposed a 108-month sentence on James Aldridge.

The court found Shirley Aldridge responsible for a tax loss of $654,257, assigning a base offense level of 20. After increases for special offense characteristics and perjurious testimony, the court imposed a 63-month sentence based upon a total offense level of 24.

## II.

The Aldridges contend that their indictments should have been dismissed because the prosecutor and IRS special agent misled the grand jury about the proper tax treatment of trusts. Well-established case law rejects the Aldridges' argument. *See* **United States v. Taken Alive**, 513 F.3d 899, 903-904 (8th Cir. 2008) (where petit jury found defendant guilty, grand jury error is rendered harmless); **United States v. Ruiz**, 446 F.3d 762, 769 (8th Cir. 2006) ("The petit jury's ultimate finding of guilt beyond a reasonable doubt renders the alleged grand jury error, if any, harmless.") (citation omitted); **United States v. Sanders**, 341 F.3d 809, 818 (8th Cir. 2003) (same).

## III.

The Aldridges claim that the district court committed trial error by: 1) directing a guilty verdict; 2) failing to properly instruct the jury; 3) demonstrating a pattern of prejudice and bias; 4) denying their motion for acquittal; 5) convicting

them based upon insufficient evidence; 6) denying their motion for a mistrial; and 7) improperly admitting evidence.

The Aldridges allege that the district court directed a guilty verdict against them. They claim the district court commented, in the presence of the jury, that the Aldridges could not challenge the IRS's determination that they were guilty of operating "sham" trusts. The Aldridges also argue that the court failed to properly instruct the jury as to their theory of the case – they performed in good faith under a bona fide trust contract. A defendant is entitled to a theory-of-defense instruction that is timely requested, supported by the evidence, and correctly states the law. *United States v. Claxton*, 276 F.3d 420, 423 (8th Cir. 2002). The district court "has broad discretion in formulating the jury instructions." *United States v. Johnson*, 278 F.3d 749, 751 (8th Cir. 2002). This court reviews the instructions as a whole, and affirms if they "fairly and adequately submitted the issues to the jury." *Id*. at 752.

The record does not support the Aldridges' claim that the court directed a guilty verdict. At a bench conference, the court informed counsel that the question before the jury was whether the Aldridges willfully filed false tax returns, not whether the trusts were properly administered or a "sham." The jury was instructed as to the Aldridges' good faith defense (Jury Instruction No. 22) and their reliance on the advice of an attorney, accountant, or other tax expert (Jury Instruction No. 23). The court committed no error.

The Aldridges assert that the district court judge demonstrated prejudice and bias that required recusal. A federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." **28 U.S.C. § 455(a)**. Recusal is within the sound discretion of the district court, and that decision is reviewed for an abuse of discretion. *In re Kansas Pub. Employees Retirement Sys.*, 85 F.3d 1353, 1358 (8th Cir. 1996). The test for recusal is "whether the judge's impartiality might reasonably be questioned by the average person on the street who

knows all of the relevant facts of a case." *Moran v. Clarke*, 296 F.3d 638, 648 (8th Cir. 2002) (en banc); *accord **United States v. Jordan***, 49 F.3d 152, 156 (5th Cir. 1995) (considering how the facts would appear to a "well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person"); ***Clemens v. United States Dist. Court for the Central Dist. of California***, 428 F.3d 1175, 1178 (9th Cir. 2005) (same); ***Matter of Mason***, 916 F.2d 384, 386 (7th Cir. 1990) (same).

Disqualification of a judge for bias is seldom appropriate unless the bias derives from an "extrajudicial source." ***United States v. Darden***, 70 F.3d 1507, 1536 (8th Cir. 1995). Absent this, the record must evince a "deep-seated favoritism or antagonism [on the part of the judge] that would make fair judgment impossible." ***Liteky v. United States***, 510 U.S. 540, 555 (1994). In this case, there was no evidence of extrinsic bias; nor does this court conclude that the trial judge exhibited a deep-seated favoritism or antagonism. The trial judge allowed the Aldridges nearly four additional months to comply with grand jury subpoenas, and dismissed the government's contempt motion despite the Aldridges' repeated failure to timely produce requested records.

The Aldridges challenge the district court's denial of their motion for acquittal. They allege the government failed to prove that they knew their tax returns were false. Reviewing the denial of a motion for acquittal, this court views the evidence in the light most favorable to the jury's verdict, resolves all evidentiary conflicts in favor of the government, and accepts all reasonable inferences supported by the evidence. ***United States v. No Neck***, 472 F.3d 1048, 1052 (8th Cir. 2007), *citing **United States v. Littrell***, 439 F.3d 875, 880 (8th Cir. 2006). This court reverses "only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.* At trial, the government presented: 1) testimony from Fritts, Edwards, and Schurle that James Aldridge knew the illegality of the tax scheme; 2) a cease-and-desist order from the Missouri Securities Division; and 3) statements by Shirley Aldridge that, based upon their reported income, she had a "concern that [their] tax return would be

-6-

pulled" if they didn't take the earned income credit. The district court did not err in denying the motion for acquittal.

The Aldridges claim that there was insufficient evidence to support a guilty verdict. They raise, for the first time, provisions of the Office of Law Revision Counsel to establish that they acted pursuant to the terms of the trusts and applicable tax law. Issues not raised in the district court are reviewed for plain error. *See United States v. Chahia*, 544 F.3d 890, 899 (8th Cir. 2008), *citing United States v. Abdullahi*, 520 F.3d 890, 896 (8th Cir. 2008). The government proved that the Aldridges exclusively controlled the trusts from 1999 through 2004, and neither the trusts nor the Aldridges reported the proper income. The evidence was sufficient to sustain the guilty verdict, and there was no plain error.

The Aldridges assert that a motion for mistrial should have been granted. Because the brief does not support this assertion with any argument, this court deems the issue abandoned. *See United States v. Gonzales*, 90 F.3d 1363, 1369-70 (8th Cir. 1996) ("Rule 28(a)(6) of the Federal Rules of Appellate Procedure requires an appellant's brief to 'contain the contentions of the appellant on the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on.' Failure to abide by this provision on an issue is deemed to be an abandonment of that issue.") (citation omitted); *United States v. Brooks*, 175 F.3d 605, 606-07 (8th Cir. 1999); *Milligan v. City of Red Oak, Iowa*, 230 F.3d 355, 360 (8th Cir. 2000).

The Aldridges also contend that the district court improperly admitted the following evidence in violation of the Rule 404(b) of the Federal Rules of Evidence: 1) an illicit affair between James Aldridge and his secretary; 2) CMI's pyramid sales scheme; and 3) the cease-and-desist order against CMI and LCGT. *See **Fed. R. Evid. 404(b)** (providing that evidence of prior bad acts, though inadmissible to show that a person acted in conformity with the prior acts, may be admissible for other purposes

such as proof of motive, opportunity, intent, and absence of mistake or accident).  The district court's evidentiary rulings are reviewed for an abuse of discretion.  *United States v. Durham*, 470 F.3d 727, 731 (8th Cir. 2006).  This court reverses a 404(b) ruling only when such evidence clearly had no bearing on the case and was introduced solely to prove a defendant's propensity to commit criminal acts.  *United States v. Howard*, 235 F.3d 366, 372 (8th Cir. 2000).

First, regarding the affair, Rule 404(b) does not bar evidence that completes the story of the crime or explains the relationship of the parties.  *See United States v. Rock*, 282 F.3d 548, 551 (8th Cir. 2002); *United States v. Rodriguez*, 859 F.2d 1321, 1326 (8th Cir. 1988).  In this case, James Aldridge's relationship with his secretary was offered to prove why she perjured herself before the grand jury: to protect James Aldridge at his request.  The secretary's testimony about the relationship was also necessary to establish how she obtained detailed knowledge of the workings of CMI and LCGT.

Second, regarding the pyramid scheme, "crimes or acts which are 'inextricably intertwined' with the charged crime are not extrinsic and Rule 404(b) does not apply."  *United States v. Adams*, 401 F.3d 886, 899 (8th Cir. 2005), *citing United States v. O'Dell*, 204 F.3d 829, 833 (8th Cir. 2000).  CMI's business plan generated income by requiring that each investor recruit other investors to form a 1,296-person pyramid.  This income was funneled through the Aldridges' trusts, and inextricably intertwined with the fraudulent trusts.

Third, as to the cease-and-desist order, Rule 404(b) permits evidence establishing knowledge, intent, and lack of mistake.  *See United States v. Frost*, 234 F.3d 1023, 1025 (8th Cir. 2000); *United States v. Sparkman*, 500 F.3d 678, 683 (8th Cir. 2007).  The order was, in part, based upon the tax deductions featured by CMI and LCGT investments.  The cease-and-desist order is admissible as proof of knowledge, intent, or lack of mistake regarding the fraudulent trust system. The court did not abuse its discretion by admitting the evidence at trial.

The Aldridges do not establish trial error. Their convictions are affirmed.

IV.

The Aldridges allege sentencing error based upon the Fifth and Sixth Amendments. James Aldridge also challenges the assignment of third-party tax losses to his sentence under U.S.S.G. § 2T1.1.

A.

The Aldridges argue that their sentences were enhanced by third-party statements not presented before the jury or at the sentencing hearing, in violation of the Fifth and Sixth Amendments. To the contrary, a sentencing court does not violate the Sixth Amendment by making determinations on enhancements not presented to a jury. *United States v. Wallace*, 408 F.3d 1046, 1048 (8th Cir. 2005) (per curiam). The Sixth Amendment right to confrontation and cross-examination is inapplicable here.

B.

James Aldridge raises the issue that the district court improperly calculated the guidelines range by including third-party tax losses in calculating the base offense level. The district court adopted the presentence investigation report's determination that, under § 2T1.1, James Aldridge is responsible for a tax loss of $1,082,027, which included $427,770 in third-party tax deficiencies. He did not object to the resulting Guidelines range at sentencing. This court reviews for plain error. *See United States v. Plancarte-Vazquez*, 450 F.3d 848, 854 (8th Cir. 2006). This court "will correct a plain error only if it affected his substantial rights and 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.*, *quoting United States v.*

***Olano***, 507 U.S. 725, 736 (1993); *see **United States v. Pirani***, 406 F.3d 543, 550 (8th Cir. 2005) (en banc).

Guideline § 2T1.1 applies to tax fraud convictions under § 7206(1). The offense level is based on the tax loss attributable to the defendant's conduct. "Relevant conduct for sentencing is viewed broadly: 'In determining the total tax loss attributable to the offense . . ., all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated.'" ***United States v. Ervasti***, 201 F.3d 1029, 1042 (8th Cir. 2000), *quoting* **U.S.S.G. § 2T1.1(c)(1) cmt. application n.2.** Tax loss is "the total amount of loss that was the object of the offense (*i.e.,* the loss that would have resulted had the offense been successfully completed)." **U.S.S.G. § 2T1.1(c)(1)**.

The record establishes that James Aldridge filed his taxes using the same trust/deduction system that he advised customers to use. Viewed broadly, James Aldridge's advice to third-parties was "relevant conduct" as part of a related "common scheme or plan." *See* **U.S.S.G. § 1B1.3(a)(2)**. The district court did not commit plain error by including third-party tax losses in James Aldridge's base offense level.

## C.

James Aldridge also alleges that the sentencing court impermissibly considered hearsay evidence when attributing third-party tax losses to him. "In making factual findings in support of a particular sentence, a district court may consider any evidence that has 'sufficient indicia of reliability to support the conclusion that it is probably accurate.'" ***United States v. Sanchez***, 461 F.3d 939, 948 (8th Cir. 2006) (citation omitted); *see also **United States v. Wise***, 976 F.2d 393, 402 (8th Cir. 1992) (holding that reliable hearsay evidence may be considered so long as it has "sufficient indicia of reliability"). Judicial findings at sentencing must be established by a

preponderance of the evidence.  *See United States v. Gordon*, 510 F.3d 811, 817-18 (8th Cir. 2007).  This court reviews "the district court's fact-finding related to the calculation of an advisory guidelines sentence for clear error." *United States v. Alvarez*, 478 F.3d 864, 868 (8th Cir. 2007).

At sentencing, the court heard testimony from an IRS agent about the taxpayers involved with CMI or the trusts, and the losses to the government, which were based upon deficiencies already paid, on appeal, or in current litigation.  The agent's testimony was based upon: 1) CMI and LCGT client records; 2) bank records; 3) IRS records of the third-parties; 4) discussions with the IRS agent reviewing the accounts of the taxpayers; and 5) the agent's 23 years experience with the IRS.  The IRS agent testified that the tax deficiencies were related to the reason for the audit "around 95 percent [of the time], if not higher."  The evidence presented at the sentencing hearing met the required indicia of reliability.  The court did not clearly err in finding by a preponderance of the evidence that James Aldridge caused the third-party tax losses.

V.

The judgment of the district court is affirmed.

_____